## MEHLIN v. SUPERIOR OIL & GAS CO.

No. 2787.    Opinion Filed November 11, 1913.

(136 Pac. 581.)

1.  **APPEAL AND ERROR**—Subsequent Appeal—Law of the Case. Where, on a former appeal, the rights of the parties under a contract sued upon, and under the issues made by the pleadings and facts disclosed by the record, have been determined in a former opinion, such determination becomes the law of the case, and on second appeal involving the same questions this court will be controlled by the conclusions reached in the former opinion.

2.  **REFORMATION OF INSTRUMENTS** — Pleading — Subsequent Parol Agreement—Admission of Evidence. Where an action is brought for reformation and specific performance of a written contract, and also for compensation for improvements made under a subsequent and distinct parol agreement which formed no part of the consideration in the written agreement, then, in order for plaintiff to recover upon the parol agreement, the terms and conditions of same should be alleged in such language as to enable the court to form some conclusions as to what the agreement was, in order to justify the admission of testimony in reference thereto.

3.  **SAME.** Where recovery is sought upon a verbal agreement and the petition fails to state what the agreement was in sufficient language to enable the court to determine what the rights or obligations of the parties were under such agreement, it is error to admit any testimony as to what the agreement was.
(Syllabus by Harrison, C.)

*Error from District Court, Nowata County;*
*T. L. Brown, Judge.*

Action by the Superior Oil & Gas Company against James G. Mehlin. Judgment for plaintiff, and defendant brings error. Reversed.

*W. H. Kornegay,* for plaintiff in error.

*Eugene B. Lawson,* for defendant in error.

Opinion by HARRISON, C.   This action was originally begun at Nowata in the United States Court for the Northern District for the Indian Territory, November 6, 1906, by the Superior Oil & Gas Company against James G. Mehlin, for spe-

cific performance of a contract to lease certain tracts or parcels of land for oil and gas purposes. The defendant, Mehlin, was an intermarried citizen of the Cherokee Nation, and the contract sued upon was entered into between Mehlin and the Superior Oil & Gas Company before it had been determined whether Mehlin would be allotted the land in question. The terms and conditions of the contract, after describing the parties thereto and the land contracted to be leased, are as follows:

"And whereas the legal rights of said Mehlin to receive the allotment of the said lands is not settled, it is mutually agreed as follows: That as soon as the rights of said Mehlin are settled, if in his favor, he will at once make an oil and gas lease to the party of the second part in accordance with the same terms and conditions required by the Secretary of the Interior, or if they not be required a regular oil and gas lease such as is used in the state of Kansas. In the event, however, that within a reasonable time from date hereof the case has not been settled, or the party of the second part may desire to drill for oil, said Mehlin agrees to provide for the filing of some one else on the land who will execute said lease.

"JAS. G. MEHLIN.
"SUPERIOR OIL & GAS CO.,
"F. C. HENDERSON, President.
"Witness: C. H. HAMMETT."

After this contract had been entered into, Mehlin, having been enrolled as an intermarried citizen, was allotted certain tracts of land, which, it seems, were not the tracts described in the contract, but Mehlin refused to make the lease which plaintiff claimed he contracted to make. In the meantime plaintiff erected certain improvements on some of the land in question, which, it is alleged, were placed there by Mehlin's consent. Plaintiff further alleged that it had paid $300 to Mehlin on said contract, all of which was denied by Mehlin.

After statehood the cause was transferred from the United States court to the district court of Nowata county, where in March, 1908, judgment was rendered by the district court in favor of the defendant. From such judgment plaintiff appealed to this court. The cause, entitled "Superior Oil & Gas Company, Plaintiff in Error, v. James G. Mehlin, Defendant in

Error," was decided by this court in an opinion handed down· March 8, 1910 (25 Okla. 809, 108 Pac. 545, 138 Am. St. Rep. 942), by Chief Justice Dunn, wherein the judgment of the court below was reversed and the cause remanded, with instructions to "set aside the order denying plaintiff's motion for a new trial and take evidence upon plaintiff's claim for compensation and damages against the defendant, making any judgment, should one be obtained, a lien on the land involved. Should the pleadings herein be insufficient, amendments should be allowed and issues framed, with the costs of the litigation abiding and following the judgment." The cause, being sent back under proper mandate from this court, was tried again in the district court of Nowata county, March, 1911, and judgment rendered in favor of the Oil & Gas Company for the sum of $1,200 and costs. From which judgment the defendant, Mehlin, appeals to this court upon 27 different assignments of error.

But the rights of the parties, under the contract sued upon, and under the issues made by the pleadings and facts disclosed by the record, were determined in the former opinion, and therefore have become the settled law of this case. Hence the assignments of error which relate to questions which were settled in the former opinion will be determined here by the conclusions reached in such opinion.

In *Sovereign Camp of the Woodmen of the World v. Bridges,* 37 Okla. 430, 132 Pac. 133, it is held:

. "It is well settled that all questions of law determined in a former appeal become the law of the case, both for the trial court and the court of appeals on a second hearing, provided the facts presented in the second hearing are substantially the same as presented in the first. *Okla. C. Elec. G. & P. Co. v. Baumhoff,* 21 Okla. 503 [96 Pac. 758]; *Metropolitan Ry. Co. v. Fonville,* 36 Okla. 76, 125 Pac. 1125; *A., T. & S. F. Ry. Co. v. Baker,* 37 Okla. 48, 130 Pac. 577."

In determining the rights of the parties under the law in the former opinion, the court said:

"The lease contract here sought to be enforced presents terms which preclude its favorable consideration at our hands. The principles enunciated in the foregoing authorities to our

minds are conclusive of plaintiff's rights. Under this lease defendant would be required to turn his land over to plaintiff, so far as oil and gas exploitation was concerned, and defendant could be deprived of this valuable property right forever."

And, further, expressing its conclusions, the court adopts from *Munroe v. Armstrong,* 96 Pa. 307, in *Federal Oil & Gas Co. v. Western Oil Co.,* 121 Fed. 674, 57 C. C. A. 428, the following language:

"Certainly the contract is most unfair, and it would be unconscionable for a court of equity to place the appellant in a position to forever deprive the owner of the soil of the right to use his land, or to drill for such treasures as the earth may contain."

And, after deciding that the contract sued upon was nonenforceable, the court further said:

"Notwithstanding the fact, however, that we are unable to grant to plaintiff the primary relief for which it prays, there is no fraud shown, and there are manifest equities in its behalf which we cannot pass without noticing. Plaintiff had paid defendant money in an effort on its part to carry out the terms of the contract as it assumed them to be, and defendant has received and retained this money, and apparently has made no offer of return. In addition thereto plaintiff, with the consent of defendant, entered upon his allotment and erected a house on the same for a residence or office building; the exact cost of the same being uncertain. Plaintiff's petition contains a prayer for general relief, and in such cases the trend of authorities is that, where the equitable relief specifically prayed for cannot be given, the plaintiff's action will not be dismissed, but in some proper manner he will be given an opportunity to obtain relief to the extent to which he is shown a right."

In summing up the issues made by the pleadings and the evidence admitted without objection, and the facts thereby developed in the former trial, this court further said:

"The actual issues made by the pleading were, in a great measure, ignored and abandoned by the parties on the trial, and evidence covering the entire subject-matter of the controversy, without reference to whether the same was put in issue or not, was generally, without objection, offered, heard, and by the master and court adjudicated."

From what we have quoted from the former opinion it is plainly apparent that the grounds upon which the court remanded the cause for a new trial were that, under the pleadings and the evidence, the record disclosed that the contract sued upon was not enforceable. But inasmuch as evidence had been admitted without objection which disclosed that certain improvements had been put on the land by the oil company, apparently pursuant to the interpretation which the parties had given the contract, the court took the view that the plaintiff might have certain equities in the matter which had not been considered by the trial court, and that by proper amendment of the pleadings and prayer the plaintiff, by being given another trial, might be able to show the value of such equities. Hence the case was sent back to the court below for the purpose of giving plaintiff the opportunity of so amending his pleadings and prayer as to allow evidence which would show the value of his equities. Pursuant to the theory upon which the cause was remanded, and the suggestions therein made, plaintiff filed an amended complaint, alleging the contract between it and defendant, setting out the contract, and declaring that defendant had refused to fulfill same, and prayed for a specific performance of the contract the same as it had in the former complaint at the former trial, except that in the amended complaint a part of paragraph 4 is as follows:

"Plaintiff states that after making the said agreement with defendant, and with the consent of the defendant, it took possession of the said lands covered by said contract and erected thereon at its own expense, with the knowledge and consent of the defendant, a frame dwelling house at a cost of $1,600, which said dwelling house is still on said lands and in possession of said plaintiff, and the said lands covered by said contract are now in the actual possession of said plaintiff."

This is the only declaration made in the amended complaint in reference to the improvements made by plaintiff. He then concludes with the prayer: First, that the contract be reformed so as to correctly describe the land which the complaint alleged was intended to be described in the contract. Second, it prayed for a specific performance of the contract, although this court

had decided that specific performance of such contract could not be enforced. But the second section of the prayer concludes as follows:

" * * * or in the event, for any reason whatsoever, specific performance of said contract, or, any part thereof, is denied, and specific performance is not decreed, then that the plaintiff be awarded compensation to the extent of the money by it paid and interest thereon, and also compensation for all beneficial and lasting improvements which in carrying out the terms of the contract it has in good faith made upon the premises of it."

In the third section of the prayer plaintiff prays that defendant be enjoined from entering upon or occupying any of the premises for the purpose of drilling for oil or gas, and for such other and further relief as to the court may seem just and meet. Plainly the whole theory of recovery was upon the written contract, and the theory of the prayer was for specific performance. The question then arises whether under this pleading the oil company, over the objection of defendant, was entitled to introduce evidence to show the amount of compensation it should receive in the premises.

It will be observed from the language of the allegation in the complaint in reference to the building of the house, that the building was placed thereon with the consent of defendant after the making of the agreement. This language of itself implies that after the written contract sued upon had been made and executed, then at a subsequent time, by virtue of a subsequent agreement, distinct from the original agreement, and so far as the language of the contract and the allegations of the complaint show, formed no part of the consideration in the written contract, plaintiff built the house on part of the land. It is not clear from the language of the complaint what the agreement was, or whether there was any definite agreement in reference to the house; whether plaintiff was to have the privilege of removal or compensation therefor at the termination of the lease, or whether defendant should keep the house, or what defendant's obligations were under this agreement, or whether, in fact, he was under any obligations in the premises, and had refused to perform same. Under these allegations the plain-

tiff should not have been permitted, over the objection of defendant, to prove the terms of an agreement in reference to the house, for the complaint as a whole shows no intimation, either from the language of the contract sued upon, or from the allegations of the complaint, that the building of the house formed any part of the consideration in the original contract, and that such contract in any wise contemplated the building of a house. In fact, as it appears from the language above quoted from the complaint, the house was placed upon the premises by virtue of a parol agreement made subsequently to the execution of the written contract sued upon, and formed no part of the original contract nor of the consideration which moved the parties in making same. In order to entitle plaintiff to reimbursement for the money paid out on the building, it should have alleged the terms of the agreement in reference thereto in such language as to enable the court to know what the agreement was, and to justify the admission of testimony in reference thereto. The allegations are insufficient for such purpose. To entitle plaintiff to recover at all on this agreement, he must have recovered as upon a separate contract the breach of which constituted a separate cause of action to the cause of action alleged for breach of the written contract, and the allegations in reference thereto are not sufficient upon which to base a judgment. We think the court erred in admitting any testimony over the objection of defendant in reference thereto, and that it erred in rendering judgment upon such testimony against defendant. Defendant objected to the introduction of any testimony under the amended complaint, and urges the overruling of same as error here. We think the objection should have been sustained and judgment rendered in favor of defendant.

The theory upon which the former opinion held that plaintiff probably had some equities which had not been considered by the trial court, was that the improvements had been made pursuant to the written contract, and that by proper amendment of the complaint proof that the improvements were so made, and the value thereof, would be admissible, but the amended complaint shows that the improvements were not made pursuant

to the written contract, nor as any part of the consideration thereof, but were made under a wholly distinct agreement subsequently entered into, without alleging what the agreement was or what were the obligations or rights of either of the parties thereto. Inasmuch, however, as defendant, Mehlin, laid no claim to the house, but had demanded its removal by plaintiff, we think plaintiff should be permitted to remove the house upon payment of costs of this action.

The judgment is therefore reversed, with instructions that it be so modified as to allow plaintiff, Superior Oil & Gas Company, to remove the house in question, if it so desires, and that defendant be discharged of all liability in this action.

By the Court: It is so ordered.