## MIDLAND VALLEY R. CO. v. EZELL.

No. 6953—Opinion Filed Jan. 2, 1917.

(162 Pac. 228.)

1. Appeal and Error—Law of Case—Reversible Error.

The law as declared on a former appeal, where there is no material difference in the evidence or questions presented, is the law of the case during the subsequent trial or appeal, and the giving of an instruction upon the second trial submitting to the jury an issue, declared upon the former appeal not to be involved in the case, constitutes reversible error.

2. Carriers—Carriage of Live Stock—Actions—Evidence.

In an action for damages for negligence in performing a contract of carriage, the refusal by the court to admit in evidence the written

contract of carriage upon which the action of plaintiff is predicated constitutes reversible error.

(Syllabus by Rummons, C.)

Error from District Court, Osage County; R. H. Hudson, Judge.

Action by H. G. Ezell against the Midland Valley Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

O. E. Swan, for plaintiff in error.

F. W. Files and Leahy & MacDonald, for defendant in error.

Opinion by RUMMONS, C. This action was commenced in the district court of Osage county by the defendant in error, who will hereinafter be called plaintiff, against the plaintiff in error, hereinafter called the defendant, to recover the sum of $1,792.40, damages for the loss of 93 head of cattle and damage to 52 head of cattle shipped by plaintiff from Ft. Worth, Tex., to Foraker, Okla., and transported over the line of the defendant, because of the negligence of the defendant in handling said cattle while in its possession.

The petition alleges that plaintiff, being the owner of 145 head of cattle, on October 14, 1908, delivered said cattle to the Missouri, Kansas & Texas Railway Company of Texas for shipment to plaintiff at Foraker, Okla.; that plaintiff entered into a written contract with said Missouri, Kansas & Texas Railway Company of Texas for the shipment of said cattle; that on October 16, 1908, said shipment of cattle was delivered by the said Missouri, Kansas & Texas Railway Company to the defendant at Nelagony, Okla., and that said defendant received said cattle from the said Missouri, Kansas & Texas Railway Company for transportation over its road from Nelagony, Okla., to Foraker, Okla.; that in the pens of defendant at Foraker there were large quantities of crude oil, and no water or feed was furnished by said defendant for said cattle; that said cattle were unloaded at Foraker without food or drink, and after being unloaded in the pens of defendant and before being delivered to plaintiff said cattle were permitted to and did drink large quantities of crude oil standing in the pens of the defendant; that from the drinking of said crude oil and lack of care and attention on the part of defendant, 93 head of said cattle died, and the remainder of said cattle were greatly injured in value.

The defendant in its second amended answer denies generally all the allegations of the petition, and pleads as an affirmative de-

fense the contract of shipment between the plaintiff and the Missouri, Kansas & Texas Railway Company, and sets forth several breaches of said contract on the part of plaintiff, which are unnecessary to be herein set out in full. The defendant further pleads that the plaintiff entered into a written contract with it at Nelagony, Okla., covering the transportation of said cattle from Nelagony, Okla., to Foraker, Okla., and pleads breaches on the part of plaintiff of said written contract, which are unnecessary to set out herein in full.

The plaintiff replied, denying generally the allegations of the answer, and alleging that immediately after said cattle were unloaded and had been dipped in crude oil by the defendant, plaintiff paid defendant the freight charges and the dipping charges, and demanded possession of said cattle in order that he might remove them from the pens of defendant and water and feed them, and that the defendant refused to deliver them, and negligently, wrongfully, unreasonably and unnecessarily held, over the objection of plaintiff, all of said cattle in its pens after the same had been dipped, for several hours; that had defendant delivered said cattle to plaintiff upon their arrival at Foraker or immediately upon dipping them or when demanded by plaintiff, none of said cattle would have died, and no loss would have been sustained by plaintiff.

Plaintiff further alleges that defendant had no facilities, or furnished no facilities at Nelagony or Foraker, for watering or feeding said cattle, nor were said cars in which said cattle were shipped equipped for watering or feeding said cattle; that if said cattle were watered before dipping they would not have drunk said crude oil. All of which facts defendant, its agents, and employes, well knew.

Plaintiff further pleads facts tending to show waiver by defendant of the affirmative defenses set up in its answer. Plaintiff further pleads that by reason of entering into the written contract at Nelagony between plaintiff and defendant, said shipment of cattle became an intrastate shipment.

The cause was tried to a jury, resulting in a verdict for plaintiff in the sum of $1,673.75. The defendant moved for a new trial, which, being overruled, it saved its exception and prosecutes this proceeding in error to reverse the judgment of the court below.

The defendant assigns several errors in the court below, only two of which need be considered in the determination of this cause. This cause has once before been before this

court. Midland Valley Railroad Co. v. Ezell, 36 Okla. 517, 129 Pac. 734. Commissioner Ames, delivering the opinion of the court therein, says:

"The defendant argues at great length that there is a fatal variance between the cause of action alleged and the cause of action proven, in that the defendant is sued as a common carrier, while the recovery is for breach of a contract to dip properly; but the record does not support this contention. The defendant is sued for damages for injuries to the cattle resulting from the negligence of the defendant in allowing oil to be in the pen, and the recovery is on the same theory. It is also urged that the injuries sustained by the cattle were after they had been delivered to the plaintiff, but the evidence does not bear out this contention. It is the duty of a carrier to deliver the freight to the consignee at the place to which it is addressed, in the manner usual at that place (Comp. Laws 1909, sec. 450); and it appears from the evidence as a whole that in handling quarantine cattle before delivery the railroad company dips them, and in this case it received compensation therefor, which is probably usual. It also appears that after these cattle were dipped the plaintiff immediately paid the freight and dipping charges and demanded the possession of the cattle, so that he could remove them from the pens, but that the defendant declined to permit him to remove them for several hours, under a mistaken idea that under the quarantine rules the cattle should be dipped twice. Under these facts, therefore, it cannot be said that the cattle had been delivered to the plaintiff."

It thus appears that upon the first trial the defendant contended that the injury complained of by plaintiff was occasioned, if defendant was liable at all, by its negligence in carrying out the contract between plaintiff and defendant to dip said cattle, and that plaintiff, having sued for the negligence of defendant in the performance of said contract of carriage, could not recover. This court held adversely to the contention of defendant as appears from the above excerpt of the opinion, but reversed the cause upon another ground. The cause having been remanded to the trial court, the defendant amended its answer setting up the defense relied upon by it.

The trial court, over the objection of defendant, gave the following instruction:

"2. For answer to the petition of the plaintiff the defendant denies each and every material allegation thereof. For further answer the defendant says that the cattle in question were delivered to the Missouri, Kansas & Texas Railway Company, at Ft. Worth. Tex., for shipment to Foraker Okla.; that the said shipment was an interstate shipment, and that if any damage or injury resulted to said cattle, in the said shipment, that then, under the terms and provisions of the laws of the United States, commonly known as the Interstate Commerce Act, and particularly under section 20 thereof, commonly known as the Carmack Amendment, the plaintiff's cause of action, if any he had, was against the Missouri, Kansas & Texas Railway Company, and not against the defendant. But in this connection you are instructed, as a matter of law, that the matters complained of in this action were not the result of the shipment of said cattle, and do not fall within the purview of said Carmack Amendment, and were not in the contemplation of the parties to the said contract of shipment; and that the matters involved in this action grew out of an arrangement between the plaintiff and defendant under which defendant was to dip plaintiff's cattle in crude oil."

The opinion of this court in Midland Valley Railroad Co. v. Ezell, supra, became the law of this case. Oklahoma City Electric Gas & Power Co. v. Baumhoff, 21 Okla. 503, 96 Pac. 758; State Bank v. City Nat. Bank, 26 Okla. 801, 110 Pac. 910; Harding v. Gillett, 25 Okla. 199, 107 Pac. 665; Leonard v. Showalter, 41 Okla. 122, 137 Pac. 346; Harper v. Kelly, 29 Okla. 809, 120 Pac. 293; Marth v. Kingfisher Commercial Club, 44 Okla. 514, 144 Pac. 1047; Chickasha Cotton Oil Co. v. Lamb, 58 Okla. 22, 158 Pac. 579.

It is apparent from the excerpts of the opinion of Commissioner Ames, above quoted, that it was determined in that case that the action is against defendant as a common carrier for a breach of its duties as such carrier under the contract of carriage, yet the trial court told the jury in the instruction complained of:

"You are instructed, as a matter of law, that the matters complained of in this action were not the result of the shipment of said cattle, and do not fall within the purview of the said Carmack Amendment, and were not in the contemplation of the parties to the said contract of shipment; and that the matters involved in this action grew out of an arrangement between the plaintiff and defendant under which defendant was to dip plaintiff's cattle in crude oil."

It is at once apparent that the trial court in giving this instruction took the same view of the liability of defendant which was contended for by the defendant at the first trial of this cause. This court having in the case of Midland Valley Railroad Co. v. Ezell, supra, determined that the defendant was liable as a common carrier and not upon an independent contract to dip the cattle of plaintiff, this instruction submitted the cause to the jury upon an issue not formed by the pleadings of the case and not within

the law of the case as theretofore laid down by this court.

This instruction is further objectionable for the reason that the dipping of cattle, subject to quarantine, by a railroad company engaged in transporting cattle from points below the quarantine line to points above the quarantine line, pursuant to regulations prescribed by law, is involved in the carriage and handling of said cattle by said railroad company and is a part of its public service, and therefore clearly embraced within its contract of carriage. Midland Valley Railroad Co. v. State, 35 Okla. 672, 130 Pac. 803; Missouri, Kansas & Texas Railway Co. v. Skinner, 61 Okla. 189, 160 Pac. 875. So the pleadings and facts developed by the evidence made this case an action for failure by defendant to perform its duties as a common carrier, and not a breach of its contract with plaintiff to dip plaintiff's cattle, and the giving of the instruction complained of was prejudicial error. Martt v. Kingfisher Commercial Club, supra.

At the last trial defendant offered in evidence the written contract under which the Missouri, Kansas & Texas Railway Company received the cattle here in question for transportation from Ft. Worth, Tex., to Foraker; the court sustained an objection to the introduction of said contract, to which defendant excepted. This action of the court is assigned as error by the defendant. We think this assignment is well taken. The plaintiff in his petition alleges that the cattle were shipped by him from Ft. Worth, Tex., to Foraker, Okla., over the lines of the Missouri, Kansas & Texas Railway Company and the defendant under a written contract which was not in his possession and a copy of which could not be attached to his petition. He alleged negligence on the part of the defendant in performing this contract of carriage, and sought to recover therefor. The defendant, answering, set up this contract and alleged failure to comply with the terms and conditions thereof on the part of the plaintiff and as an affirmative defense to this action. The plaintiff having pleaded this contract and based his cause of action upon a failure to perform the same, the defendant was clearly entitled to have this contract in evidence and have it construed by the court and considered by the jury, and the trial court committed reversible error in excluding the same. Missouri, Kansas & Texas Railway Co. v. Skinner, supra.

While plaintiff in his reply sets up that plaintiff and defendant entered into another written contract for the transportation of these cattle from Nelagony to Foraker, this does not necessarily constitute a rescission and abandonment of the contract entered into at Ft. Worth with the Missouri, Kansas & Texas Railway Company and a substitution therefor of the contract entered into at Nelagony, and whether or not said cattle were transported from Nelagony to Foraker under the first contract or the second contract was a question of fact to be determined by the jury under proper instructions, and the defendant was entitled to have the first contract entered into at Ft. Worth, Tex., before the jury for a proper determination of the issues raised by the pleadings.

Several other errors are assigned by defendant, but as they will not probably arise upon another trial of this cause, they will not be herein considered.

The judgment of the court below should be reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.